```
                  UNITED STATES DISTRICT COURT
                  EASTERN DISTRICT OF LOUISIANA
```

NEW ORLEANS COLD STORAGE AND                    CIVIL ACTION
WAREHOUSE COMPANY, LTD.

VERSUS                                          NO: 15-6642

GRENZEBACH CORP.                                SECTION: "J"(5)

### ORDER AND REASONS

Before the Court is Defendant Grenzebach Corporation's *Motion to Compel Arbitration* **(Rec. Doc. 10)**, Plaintiff New Orleans Cold Storage and Warehouse Company Ltd.'s opposition thereto (Rec. Doc. 11), and Grenzebach's reply memorandum (Rec. Doc. 14). Having considered the motion and memorandum of counsel, the record, and the applicable law, the Court finds that the motion should be **GRANTED** for the reasons set forth more fully below.

### FACTS AND PROCEDURAL BACKGROUND

This litigation derives from a sales agreement (the "Agreement") confected between Plaintiff New Orleans Cold Storage and Warehouse Company ("NOCS") and Defendant Grenzebach Corporation ("Grenzebach").[1] NOCS is a Louisiana company that provides "warehousing and logistics services for the handling of

---

[1] Plaintiff and Defendant spell Defendant's name differently. Plaintiff spells it "Grenzebach," while Defendant adds a second "n" to the name, spelling it "Grenzenbach." This Court will use the spelling that appears on Defendant's website, omitting the second "n."

time and temperature sensitive cargo for its customers," according to its petition for damages. (Rec. Doc. 1-1.) NOCS frequently receives and handles boxes of fresh poultry. In 2013, NOCS approached Grenzebach about automating the palletization of fresh poultry boxes. On January 28, 2014, Grenzebach provided NOCS with a Quotation (No. LG13147LTR.6.0) for an automated de-palletizing and palletizing system. (*See* Rec. Doc. 10-2, at 15-30.)

NOCS and Grenzebach entered into the Agreement, which called for the development and implementation of such an automated system. According to Grenzebach, the Agreement consists of the Quotation, Addendum 1 (Grenzebach's Standard Terms and Conditions of Sale), and Addendum 2 (Limitation of Liability and Service Agreement). The Quotation specifically states that a Purchase Order that arises from the Quotation is subject to the Standard Terms and Conditions. The Standard Terms contain an arbitration clause, which states:

> Except as specifically provided herein, any dispute, controversy or claim arising out of or in relation to or in connection with this agreement, or in the operations carried out under this agreement, including without limitation any dispute as to the contraction, validity, interpretation, enforceability, or breach of this agreement, shall be exclusively and finally settled by arbitration . . . .

(Rec. Doc. 10-2, at 14.)

The parties also signed a Royalty Agreement. (Rec. Doc. 10-2, at 1-3.) Pursuant to this agreement, NOCS agreed to refer companies seeking a similar system to Grenzebach, and Grenzebach

agreed to pay a commission to NOCS in return. After encountering problems with the system designed by Grenzebach, NOCS brought suit in Civil District Court for the Parish of Orleans. NOCS sought rescission of the sale and damages for breach of contract. Grenzebach removed the case to this Court on December 9, 2015. On December 22, Grenzebach filed the instant motion. NOCS opposed the motion on January 5, 2016. This Court granted Grenzebach leave to file a reply memorandum on January 11.

### **PARTIES' ARGUMENTS**

Grenzebach argues that this matter is arbitrable because (1) the parties agreed to arbitrate in a written contract, (2) the transaction involved interstate commerce, and (3) the contract was valid under general principles of contract law. First, Grenzebach refers to an agreement signed by the parties, which it claims specifically incorporated Grenzebach's "Standard Terms and Conditions of Sales dated January 24, 2014, attached to quotation no. LG13147LTR.6.0." It contends that the Standard Terms provide that any dispute arising out of the agreement is subject to arbitration in Atlanta, Georgia. Thus, Grenzebach argues that NOCS agreed to arbitrate in writing.

Second, Grenzebach argues that the transaction involves interstate commerce because the parties were citizens of different states. Third, Grenzebach argues that the contract was valid under Georgia contract law, which proves that arbitration clauses that

3

are incorporated by reference into an agreement are enforceable as long as they are clear and unambiguous. Grenzebach also contends that Plaintiff's claims are within the scope of the arbitration clause. Finally, Grenzebach asks this Court to stay this matter pending the outcome of the arbitration.

In its opposition, NOCS argues that Grenzebach has not demonstrated the existence of an agreement to arbitrate. NOCS claims that the contract attached to Grenzebach's motion is not the subject Agreement. Rather, NOCS contends that Grenzebach attached the Royalty Agreement, the Quotation provided to NOCS, and an unrelated copy of Grenzebach's Standard Terms and Conditions. NOCS argues that this evidence does not establish the existence of an agreement to arbitrate any disputes arising out of the automated system agreement.

Grenzebach filed a reply, in which it asserts that the evidence shows that the parties agreed to arbitrate any dispute arising out of the Agreement. It points out that the signature of the CEO of NOCS, Mark Blanchard, appears on each page of the Standard Terms attached to its motion as an exhibit. Further, Grenzebach attached an email from Blanchard to a Grenzebach executive, in which Blanchard stated that NOCS accepted the terms in Grenzebach's Quotation. Because the Quotation incorporated the Standard Terms by reference, Grenzebach argues that this matter should be submitted to arbitration.

**LEGAL STANDARD**

Section 2 of the Federal Arbitration Act (FAA), 9 U.S.C. § 1, *et seq.,* provides:

> A written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for revocation of any contract.

9 U.S.C. § 2.

Section 2, "the primary substantive provision of the Act," reflects "a liberal federal policy favoring arbitration agreements" and effectively creates "a body of federal substantive law of arbitrability." *Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983). The United States Court of Appeals for the Fifth Circuit has observed that "[i]n enacting the Federal Arbitration Act, Congress declared a national policy in favor of arbitration. [C]ongress' clear intent, in the Arbitration Act, [was] to move the parties to an arbitrable dispute out of court and into arbitration as quickly and easily as possible." *Snap-on Tools Corp. v. Mason*, 18 F.3d 1261, 1263 (5th Cir. 1994) (quoting *Moses H. Cone Mem. Hosp.*, 460 U.S. at 22).

Section 3 of the FAA provides:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under the agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

9 U.S.C. § 3.

"The FAA requires district courts to 'compel arbitration of otherwise arbitrable claims, when a motion to compel arbitration is made.'" *Harris v. JCPenney Co., Inc.*, No. 07-9675, 2008 WL 90038, at *1 (E.D. La. Jan. 8, 2008) (quoting *Sedco, Inc. v. Petroleos Mexicanos Mexican Nat'l Oil Co.*, 767 F.2d 1140, 1147 (5th Cir. 1985)). When deciding motions to compel arbitration, courts conduct a two-step inquiry. *Carey v. 24 Hour Fitness, USA, Inc.*, 669 F.3d 202, 254 (5th Cir. 2012); *Wash. Mut. Fin. Grp. v. Bailey*, 364 F.3d 260, 263 (5th Cir. 2004). The Court first inquires whether the parties agreed to arbitrate the dispute at issue. *Id.* This inquiry consists of two subsidiary questions: "(1) whether there is a valid agreement to arbitrate between the parties; and (2) whether the dispute in question falls within the scope of that arbitration agreement." *Webb v. Investacorp, Inc.*, 89 F.3d 252, 257–58 (5th Cir. 1996).

To determine whether the parties formed a valid agreement to arbitrate, the Court applies ordinary principles of state contract

6

law. *Am. Heritage Life Ins. Co. v. Lang*, 321 F.3d 533, 537-38 (5th Cir. 2003); *Grigson v. Creative Artists Agency, LLC*, 210 F.3d 524, 531 (5th Cir. 2000). "[T]he federal policy favoring arbitration does not apply to the determination of whether there is a valid agreement to arbitrate between the parties." *Am. Heritage Life Ins. Co.*, 321 F.3d at 538. In analyzing arbitrability, courts apply federal substantive law. *Grigson*, 210 F.3d at 531. Moreover, "as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *Moses H. Cone*, 460 U.S. at 24-25. If the Court finds that there is a valid agreement to arbitrate between the parties and that the dispute in question falls within the scope of the arbitration agreement, the Court inquires whether any federal statute or policy renders the claims nonarbitrable. *Wash. Mut. Fin. Grp.*, 364 F.3d at 263.

Under section 3 of the FAA, a district court must stay a lawsuit when a party demonstrates that any issue involved in the lawsuit is "referable to arbitration under an agreement in writing for such arbitration." 9 U.S.C. § 3. This provision is mandatory and demands a stay of legal proceedings "whenever the issues in a case are within the reach of an arbitration agreement." *Complaint of Hornbeck Offshore (1984) Corp.*, 981 F.2d 752, 754 (5th Cir.


1993). When these circumstances are present, a district court "has no discretion under section 3 to deny the stay." *Id.*

## DISCUSSION

As an initial matter, the Court notes that the Agreement falls within the scope of the FAA. Grenzebach asserts that it is incorporated and has its principal place of business in Georgia. NOCS is incorporated and has its principal place of business in Louisiana. NOCS does not contest these assertions. The Fifth Circuit has held that "[c]itizens of different states engaged in performance of contractual operations in one of those states are engaged in a contract involving commerce under the FAA." *Mesa Operating Ltd. P'ship v. La. Intrastate Gas Corp.*, 797 F.2d 238, 243 (5th Cir. 1986). The Court therefore concludes that the Agreement involves interstate commerce as necessary to implicate the FAA and that Grenzebach may seek relief thereunder.

First, the Court finds that the parties confected a valid agreement to arbitrate under Georgia law.[2] "A meeting of the minds is the first requirement of the law relative to contracts." *Tekin v. Whiddon*, 504 S.E.2d 722, 725 (Ga. App. 1998) (quoting *Simmons v. McBride*, 492 S.E.2d 738, 739 (Ga. App. 1997)). To determine whether the parties had the requisite "meeting of the minds," or

---

[2] Grenzebach asserts that Georgia law applies pursuant to the terms of the contract. NOCS does not contest this assertion.

mutual assent, Georgia law employs the objective theory of intent "whereby one party's intention is deemed to be that meaning a reasonable man in the position of the other contracting party would ascribe to the first party's manifestations of assent, or that meaning which the other contracting party knew the first party ascribed to his manifestations of assent." *Cox Broad. Corp. v. Nat'l Collegiate Athletic Ass'n*, 297 S.E.2d 733, 737 (Ga. 1982).

In this case, the parties mutually agreed to be bound by Grenzebach's Standard Terms and Conditions. Each page of the Quotation contains a signature, which Grenzebach claims belongs to CEO Blanchard. The same signature appears on each page of the Standard Terms, which contain the arbitration clause. Moreover, Blanchard confirmed in two separate emails that NOCS accepted Grenzebach's Standard Terms and Conditions. (*See* Rec. Doc. 12-2, at 3-7.) Objectively, the signatures and the email profess NOCS's intent to be bound by Grenzebach's Standard Terms.

NOCS does not deny that the Standard Terms contain an arbitration clause. Instead, it attempts to discredit the documents produced by Grenzebach by pointing out that the Standard Terms reference a different Quotation number and date than the Quotation. However, Blanchard's signature appears on the Standard Terms, which NOCS does not explain. Nor does it explain Blanchard's emails in which he accepts the Grenzebach Standard Terms. Thus, NOCS's acceptance gave rise to a binding contract to arbitrate.

NOCS would be bound by the arbitration clause even if Blanchard had not signed the Standard Terms or agreed to the Terms in an email. According to Grenzebach, the Agreement consists of the Quotation, Addendum 1, and Addendum 2. The Quotation specifically references and incorporates the addenda. (*See* Rec. Doc. 10-2, at 30.) Under Georgia law, "incorporation by reference is generally effective to accomplish its intended purpose where . . . the provision to which reference is made has a reasonably clear and ascertainable meaning." *Binswanger Glass Co. v. Beers Const. Co.*, 234 S.E.2d 363, 365 (Ga. App. 1977). The arbitration clause clearly and specifically provides that any dispute arising from the Agreement is subject to arbitration. Therefore, it was incorporated by reference into the Quotation, and Blanchard's signature on the Quotation constituted acceptance of the Standard Terms.

Second, this litigation falls under the scope of the arbitration clause. The Agreement is subject to a broad arbitration clause, which provides that "any dispute, controversy or claim arising out of or in relation to or in connection with this agreement, or in the operations carried out under this agreement, including without limitation any dispute as to the construction, validity, interpretation, enforceability or breach of this agreement" is subject to arbitration. The Fifth Circuit and the Supreme Court have found that such broad arbitration clauses are

10

enforceable. *Prima Paint Corp., v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 397-98 (1967); *Pennzoil Expl. & Prod. Co.*, 139 F.3d at 1067. Such a clause reaches "all aspects of the relationship" between the parties. *Nauru Phosphate Royalties, Inc. v. Drago Daic Interests, Inc.*, 138 F.3d 160, 164-65 (5th Cir. 1998). This litigation includes claims for rescission of the contract and for breach of contract. Because these claims arise out of the Agreement, they fall within the scope of the arbitration clause.

NOCS does not argue that a federal statute or policy renders the claims nonarbitrable. Thus, the Court finds that NOCS's claims are arbitrable. Pursuant to Section 3 of the FAA, the Court holds that this matter must be stayed pending the outcome of the arbitration.

## CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that Defendant's *Motion to Compel Arbitration* **(Rec. Doc. 10)** is **GRANTED**.

New Orleans, Louisiana, this 22nd day of January, 2016.

CARL J. BARBIER
UNITED STATES DISTRICT JUDGE

11